UNITED STATES of America, Plaintiff,

v.

**TWO TRACTS OF REAL PROPERTY, CONTAINING 30.80 ACRES, MORE OR LESS, WITH APPURTENANCES, LOCATED IN BRUCE TOWNSHIP, GUILFORD COUNTY, NORTH CAROLINA, Defendant.**

No. C–86–4–G.

United States District Court,
M.D. North Carolina,
Greensboro Division.

July 30, 1987.

Richard Robertson, Asst. U.S. Atty., Greensboro, N.C., for plaintiff.

Michael R. Nash, Greensboro, N.C., for defendant.

### MEMORANDUM OPINION

ERWIN, District Judge.

The Government commenced this action, a civil forfeiture proceeding pursuant to 21 U.S.C. § 881(a)(7) (Supp.1987), on January 2, 1986. The case came on for trial before the court on May 20, 1987 and continued until May 21, 1987 at Greensboro, North Carolina. The Government alleges that the house and land at issue were used to facilitate the possession of cocaine with intent to distribute. The claimant alleges that she had no knowledge that unlawful activities occurred on the premises.

During his closing argument on behalf of the claimant, claimant's counsel argued to the court that the forfeiture statute in question was unconstitutional. The court expressed the opinion that counsel's argument on this issue was waived, as counsel had not raised the issue prior to closing argument, despite being given an extension of time to file a pretrial brief. Nonetheless, the court allowed counsel to file a post-trial brief on the constitutionality of the forfeiture statute, to which the United States has responded. The court finds 21 U.S.C. § 881(a)(7) to be constitutional as applied in the instant case.

Title 21, United States Code, Section 881(a)(7) provides as follows:

(a) Property subject

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(7) All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of

this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

An action pursuant to Section 881 is an *in rem* civil suit. Although "[b]y existing federal law, property is forfeited the instant it is used in violation of the drug laws," the Government must bring the *in rem* action to take possession. *United States v. Kemp*, 690 F.2d 397, 401 (4th Cir.1982). In civil forfeiture actions brought under 21 U.S.C. § 881, there is a shifting burden of proof at trial. "The Government has the initial burden of showing that there was probable cause to initiate the forfeiture action—that is, probable cause to believe that a substantial connection existed between the property to be forfeited and the criminal activity defined by the statute...." *United States v. Premises Known as 2639 Meetinghouse*, 633 F.Supp. 979, 986 (E.D.Pa.1986); *see also United States v. $22,287.00 U.S. Currency*, 709 F.2d 442, 447 (6th Cir.1983); *accord, United States v. 1966 Beechcraft Aircraft Model King Air*, 777 F.2d 947, 953 (4th Cir.1985); *cf. United States v. Certain Lots in Virginia Beach*, 657 F.Supp. 1062 (E.D.Va.1987) (holding that one drug transaction, a sale to undercover agent who suggested meeting at the house to complete the negotiations and packaging, was insufficient to establish substantial element of the connection). The belief must be grounded in more than mere suspicion but can arise with less than *prima facie* proof. *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir.), *cert. denied sub nom., Willis v. United States*, 465 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). The burden then shifts to the claimant to prove by a preponderance of the evidence that either the activities did not occur or that the claimant had no knowledge. *Meetinghouse*, 633 F.Supp. at 987.

By way of incorporation by reference, counsel for the claimant has forwarded to the court a copy of an *amicus curiae* brief filed on the constitutionality of the forfeiture statute in an unrelated and ongoing case in the United States District Court for the Eastern District of North Carolina. While posited on the same statute, the *amicus* brief grapples with a different factual situation than the one before the court in the instant case. Notwithstanding factual differences, the court is able to distill two arguments regarding the constitutionality of Section 881: the shifting of the burden of proof to the claimant, a procedural due process argument, and a general, substantive due process argument.

In feudal times, the English lords used forfeiture provisions to retain control over the lands of the realm, and, consequently, the founding fathers were understandably concerned over the forfeiture of property in this country. *See United States v. Grande*, 620 F.2d 1026, 1037–39 (4th Cir. 1980). Historically, the courts have paid close attention to the forfeiture of citizens' property to the Government. Likewise, this court takes very seriously its obligations to uphold the laws of Congress and to protect the rights of citizens to be secure in their property.

Neither counsel for the parties nor the court can find any precedent from the Fourth Circuit Court of Appeals treating the provisions of 21 U.S.C. § 881(a)(7) to a constitutional analysis. However, in at least one unpublished opinion, the Fourth Circuit has recognized the shifting burden of proof, the scheme to which defendant objects. *United States v. Paramount Petroleum Corp.*, No. 84–1977, slip op. (4th Cir. July 2, 1985) (per curiam). The Supreme Court has yet to address this issue.

■ With respect to Section 881, the Ninth Circuit has ruled as follows:

Appellant's constitutional attack on 21 U.S.C. § 881 and 19 U.S.C. § 1615 is mounted on the premise that forfeiture statutes are essentially criminal; therefore, the shifting of the burden of proof to the claimant denies him due process. Forfeiture statutes are deemed criminal

for the purpose of protecting rights secured by the Fourth and Fifth Amendments (*Boyd v. United States* (1886) 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746), but they are predominantly civil. Despite some dicta attacking their civil characterization (*United States v. United States Coin and Currency* (1971) 401 U.S. 715, 719–20, 91 S.Ct. 1041, [1043–44] 28 L.Ed.2d 434), the Supreme Court has firmly refused to broaden the criminal aspect of forfeiture so as to encompass a wider range of constitutional protections. (*Calero-Toledo v. Pearson Yacht Leasing Co.* (1974) 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452; *One Lot Emerald Cut Stones and One Ring v. United States* (1972) 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438. *Accord: Bramble v. Richardson* (10th Cir.1974) 498 F.2d 968; *United States v. Mendoza* (5th Cir.1973) 473 F.2d 692.) Accordingly, we conclude that the challenged forfeiture statutes are not criminal enough to prevent Congress from imposing the burden of proof on the claimant, and we uphold the constitutionality of 21 U.S.C. § 881 and 19 U.S.C. § 1615.

*United States v. One 1970 Pontiac GTO, 2-Door Hardtop*, 529 F.2d 65, 66 (9th Cir. 1976) (per curiam). The court finds the reasoning of the Ninth Circuit to be persuasive as well as constitutionally correct and, therefore, holds that 21 U.S.C. § 881(a)(7) provides an appropriate procedural mechanism which comports with due process.

■ Similarly, the court finds also that the substantive requirements of due process are satisfied in the present application of 21 U.S.C. § 881(a)(7). Clearly, it would be unconstitutional to deprive a citizen of property without giving the citizen the opportunity to demonstrate why the property should not be forfeit.

Mr. Chief Justice Marshall intimated as much over a century and a half ago in observing that "a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed." *Peisch v. Ware*, 4 Cranch 347, 363 [2 L.Ed. 643] (1808). It therefore has been implied

that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. See, *id.*, at 364; *Goldsmith-Grant Co. v. United States*, 254 U.S. [505], at 512 [41 S.Ct. 189, 65 L.Ed. 376 (1921)]; *United States v. One Ford Coupe Automobile*, 272 U.S. [321], at 333 [47 S.Ct. 154, 71 L.Ed. 279 (1926)]; *Van Oster v. Kansas*, 272 U.S., [465] at 467 [47 S.Ct. 133, 71 L.Ed. 354 (1926)]. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. Cf. *Armstrong v. United States*, 364 U.S. 40, 49 [80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)].

*Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689–90, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974). The portion of 21 U.S.C. § 881(a)(7) which prohibits the forfeiture of property if the claimant can establish that the unlawful activities were accomplished without her knowledge or consent fully comports with the reasoning of the Supreme Court. *See United States v. 124 East North Ave., Lake Forest, Ill.*, 651 F.Supp. 1350, 1357 (N.D.Ill. 1987). *See also United States v. Schmalfeldt*, 657 F.Supp. 385, 388 (W.D.Mich.1987) (citing *Calero-Toledo*, 416 U.S. at 689–90, 94 S.Ct. at 2094–95, and noting, albeit with some curiosity that for a claimant to prevail in a defense of "innocent ownership" he must show "not only that he was uninvolved in and unaware of the wrongful activity, but also that *he had done all that could be reasonably expected to prevent the proscribed use of his property*").

A final substantive issue troubles the court, and neither party addressed the court's concern despite inquiry from the court at the time of trial. The court queried whether the entirety of tract two was forfeit, even though the evidence showed

only that the house, pool, and driveway had any connection with the illegal drug transactions. As this issue was raised solely by the court, it need not be ruled on today; however, it merits some discussion.

The statute provides that "[a]ll" real property used to facilitate narcotics offenses is subject to forfeiture. 21 U.S.C. § 881(a)(7). With regard to the amendments which added real property used in drug trafficking to Section 881, the Senate Judiciary Committee wrote: "This bill is intended to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies." S.Rep. No. 225, 98th Cong., 2d Sess. 192, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3375. Congress has clearly mandated the widespread use of various forfeiture proceedings as weapons in the war on drugs. *See, e.g., Russello v. United States*, 464 U.S. 16, 28, 104 S.Ct. 296, 303, 78 L.Ed.2d 17 (1983) (upholding broad construction of RICO's forfeiture provisions, 18 U.S.C. § 1963 (1982)).

■ The court is of the opinion that the plain language of the statute, coupled with the obvious intent of Congress to strengthen and make more effective civil forfeiture provisions, mandates a conclusion that the entirety of each tract of land wherein the Government maintains its burden of proof must be forfeit. *Cf. United States v. Littlefield*, 821 F.2d 1365 (9th Cir.1987) (supporting a holding that 21 U.S.C. § 853(a) (Supp.1987), the criminal, *in personam*, forfeiture provision, provides for forfeiture of the entire tract, not simply the portion used to support the cultivation of marijuana, with the construction that Section 881(a)(7) would mandate the forfeiture of the entire tract). Nonetheless, forfeiture is a drastic procedure, and the court is of the opinion that the Government must carry its burden of proof with respect to each tract of land individually and not as a collective whole.

Accordingly, the court can only conclude that the statute in question does not violate the claimant's right to substantive due process and is, therefore, constitutional. Having fully considered the oral and documentary evidence presented by the parties and after hearing the argument of counsel for the parties, the court enters its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## Findings of Fact

1. The claimant, Cynthia Reynolds, and William W. Snouffer entered into a lease agreement with T.N. Boone, III regarding the subject property on November 2, 1983. The lease agreement provided for a term of fourteen years and included an option to purchase.

2. By virtue of the deed of conveyance from T.N. Boone, III, the Government is presently the owner of the subject property and is the holder by assignment of the note dated November 2, 1983 and delivered as part payment of the option to purchase.

3. The Government's witness, Edward ("Bennie") Pegram, is presently incarcerated for conspiracy to possess cocaine.

4. In January 1985, Mr. Pegram arrived at the subject property with Ray Reynolds, the claimant's husband. In the bedroom of the subject property, Mr. Reynolds showed Mr. Pegram what was described as a kilogram of cocaine hydrocholoride.

5. Subsequently, in late January or early February 1985, Mr. Pegram received a call from William W. Snouffer. Mr. Snouffer warned that the authorities were observing the subject property and that the property needed "to be cleaned out." Mr. Pegram drove to the property where he met the claimant who said that her husband had called and told her what to do. She then gave Mr. Pegram a briefcase which he removed from the property and hid. Later, Mr. Pegram took Mr. Reynolds to retrieve the briefcase. At that time, Mr. Reynolds opened the valise, showing Mr. Reynolds the contents of money and cocaine. Mr. Reynolds gave Mr. Pegram a sample of the cocaine, which Mr. Pegram ingested on the spot.

6. In February or March 1985, Mr. Reynolds called Mr. Pegram at approxi-

mately 3:00 a.m. and summoned Mr. Pegram to the subject property. Mr. Reynolds told Mr. Pegram that he needed assistance in making a drug delivery. He then opened the freezer compartment of the household refrigerator and withdrew a green NCNB bank bag which contained a quantity of cocaine in a plastic bag. Mr. Pegram then aided Mr. Reynolds in the sale and delivery of the cocaine.

7. A triple beam scales was kept in the house, sometimes under the kitchen sink, sometimes in the bathroom closet. This scales was used to weigh and cut cocaine in the house.

8. For some brickwork on the house and property, Ray Reynolds once gave Mr. Pegram approximately one ounce of cocaine.

9. On one occasion, Mr. Pegram observed Mr. Reynolds reach under his bed and retrieve a quantity of cocaine.

10. Kevin Wesley Doggett is currently serving a sentence in federal custody for conspiracy to distribute cocaine.

11. Ray Reynolds showed Mr. Doggett how to cut cocaine to make it a more profitable product. In 1983 while the claimant and her husband were living in a trailer park, Mr. Doggett and Mr. Reynolds cut cocaine six or seven times.

12. Mr. Doggett made numerous drug runs to Florida to purchase cocaine. In March 1985, he made a trip to Florida where he acquired three kilograms of cocaine and then delivered it to Ray Reynolds at the subject property. The claimant was at home at that time.

13. Mr. Doggett assisted Mr. Reynolds with cutting cocaine at the subject property. Mr. Reynolds kept cutting agents, including mannitol, in a suitcase under the bed and also kept some cutting agents in a storage shed located behind the house and on the subject property. Mr. Reynolds used a food processor to help cut cocaine.

14. On one occasion when the claimant was in the house, Mr. Doggett saw Mr. Reynolds remove $35,000 from a safe in the bedroom closet. Mr. Doggett then took the money to one Juan Alfonso, a Colum-

bian drug merchant. On a second occasion, Mr. Doggett delivered $40,000 to Juan Alfonso.

15. Mr. Doggett observed Ray Reynolds secret cocaine in the attic insulation and in the freezer compartment of the refrigerator.

16. Pete Warren delivered cocaine for Ray Reynolds at least once and saw cocaine in a package in the bedroom closet and in a freezer.

17. Mr. Warren owed Mr. Pegram money for a drug debt. Mr. Pegram owed a drug debt to Mr. Reynolds. To settle both drug debts, Mr. Warren constructed a swimming pool on the subject property during the summer 1985.

18. On at least one occasion, Mr. Reynolds provided cocaine to Mr. Warren's construction crew.

19. Ray Reynolds directed Mr. Pegram, Mr. Doggett, and Mr. Warren not to discuss the drug business or drug transactions in the presence of his wife, the claimant.

20. The claimant lived in and continues to live in the house on the subject property.

21. The claimant is married to Ray Reynolds and has never been legally separated from him.

22. The claimant knew about Ray Reynolds' girlfriend, and this was a cause of concern to her.

23. Ray Reynolds spent a significant time away from the subject property.

24. The Government introduced no evidence linking tract one to any illegal narcotics transactions of any kind.

### Discussion

█ In the case *sub judice*, claimant does not contest the fact that the subject property was utilized to facilitate drug deals. Rather, claimant argues that she had no knowledge of the almost continuously ongoing narcotics transactions. Claimant testified that she was overwrought with suspicions that her husband was having an affair and that this concern, in effect, blinded her to realities of the

cocaine trafficking in her kitchen and bedroom. The court simply cannot accept this assertion, particularly in the light of the testimony of Mr. Pegram that the claimant delivered to him, upon instructions from her husband, a quantity of cocaine and money secreted in a briefcase to secure the premises in case of a search by law enforcement officers. Accordingly, the court enters the following conclusions of law.

### Conclusions of Law

1. The court has jurisdiction over the parties and over this dispute.

2. The subject property described as tract two was used to facilitate the distribution of cocaine hydrochloride, a controlled substance, in violation of the laws of the United States. The subject property described as tract one was not used to facilitate any illegal narcotics transactions.

3. The claimant, Cynthia Reynolds, had knowledge of the unlawful use of tract two.

4. Tract two as described in the complaint and amended complaint is properly and lawfully forfeited to the United States.

A Judgment ordering forfeiture will be filed contemporaneously herewith.