UNITED STATES of America

v.

**PARCEL OF REAL PROPERTY KNOWN AS 6109 GRUBB ROAD, MILLCREEK TOWNSHIP, ERIE COUNTY, PENNSYLVANIA and Buildings and Improvements Erected Thereon.**

UNITED STATES of America

v.

**PARCEL OF REAL PROPERTY KNOWN AS 708–710 WEST NINTH STREET, CITY OF ERIE, PENNSYLVANIA and Buildings and Improvements Erected Thereon.**

Civ. A. Nos. 88–105 ERIE, 88–106 ERIE.

United States District Court,
W.D. Pennsylvania.

March 14, 1989.

John J. Mead, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

John P. Garhart, Erie, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

The United States has brought these forfeiture proceedings pursuant to the Drug Abuse Prevention Act, 21 U.S.C. § 881 et seq., seeking to have two parcels of real property forfeited on the theory that the properties were used to facilitate violations of the federal narcotics laws. *See* 21 U.S. C. § 881(a)(7).[1] Titles to both properties are held by Richard DiLoreto and his wife Jane, as tenants by the entirety.

Richard DiLoreto was convicted and sentenced by this Court on September 23, 1988, on one count of conspiracy to distribute cocaine, two counts of using a telephone to facilitate the distribution of cocaine, and two counts of failing to report income received from the sale of cocaine.

Claims to both properties herein have been filed by Richard and Jane DiLoreto, and on behalf of their five minor children. The claimants do not contest that the United States has met its burden of establishing probable cause to believe that both properties were used by Richard DiLoreto to store and sell cocaine. They also have not presented any evidence to rebut that showing. They have instead chose to defend against these forfeiture actions on two other bases. First, all of the claimants maintain that the provisions of 21 U.S.C. § 881 are unconstitutional. Secondly, Jane DiLoreto and the children assert that their interests are exempted from forfeiture by the innocent owner provision of 21 U.S.C. § 881(a)(7).

### I. CONSTITUTIONALITY OF 21 U.S.C. § 881.

Claimants' constitutional attack on 21 U.S.C. § 881 is mounted on the premise

---

1. The United States also alternatively alleges that one of the properties (Grubb Road) was purchased with the proceeds of illegal sales of controlled substances. *See* 21 U.S.C. § 881(a)(6). Our disposition herein, however, makes it unnecessary for us to consider that claim.

that the statute is "essentially criminal" in nature, and that all the constitutional safeguards afforded to criminal defendants are therefore applicable. Thus, the question with which we are faced is "whether a [§ 881] forfeiture proceeding is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984), (citing *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938)). While § 881 is a relatively recent enactment, the underlying question herein is not novel or new. As the Supreme Court recognized in 1938:

> Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforceable by civil proceedings since the original revenue law of 1789. In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions.

*Helvering*, 303 U.S. at 400, 58 S.Ct. at 633 (citations omitted).

Because determining whether a forfeiture proceeding is civil or "essentially criminal" is not always readily apparent, the Supreme Court in *Helvering* and its progeny has developed a specific analytical test, which is essentially one of statutory interpretation.

> Our inquiry in this regard has traditionally proceeded on two levels. First we have set out to determine whether Congress in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. See, *One Lot Emerald Cut Stones v. United States, supra,* [409 U.S. 232] at 236–237, [93 S.Ct. 489 at 492–493, 34 L.Ed.2d 438] [(1972)]. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. See, *Flemming v. Nestor*, 363 U.S. 603, 617–621 [80 S.Ct. 1367, 1376, 1378, 4

L.Ed.2d 1435] (1960). In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." *Id.,* at 617 [80 S.Ct. at 1376]. See also *One Lot Emerald Cut Stones v. United States, supra,* [409 U.S.] at 237 [93 S.Ct. at 493]; *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 [76 S.Ct. 219, 222, 100 L.Ed. 149] (1956).

*United States v. Ward*, 448 U.S. 242, 248–249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980), quoted in *One Assortment of 89 Firearms*, 465 U.S. at 362–363, 104 S.Ct. at 1105.

Applying the first prong of the analysis to § 881 leads to the inescapable conclusion that Congress designed it to be a "civil in rem" proceeding rather than a criminal sanction. First of all, as noted in *United States v. Premises Known as 2639 Meetinghouse*, 633 F.Supp. 979, 994 (E.D.Pa. 1986), the Comprehensive Drug Abuse Protection and Control Act of 1970 includes § 881 within "Administrative and Enforcement Practices" (Part E) not "Offense and Penalties" (Part D). Secondly, the language of the section itself uses the label "civil forfeiture." *United States v. D.K.G. Appaloosas, Inc.* 829 F.2d 532, 543 (5th Cir.1987). Thirdly, as in the forfeiture provision in *One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361, Congress chose not to prescribe in § 881 the procedural mechanisms for effectuating a forfeiture. It instead incorporated by reference the procedures in an already existing body of civil forfeiture law —the customs law. "By creating such distinctly civil procedures for forfeitures ... Congress has indicate[d] clearly that it intended a civil not a criminal sanction." *One Assortment of 89 Firearms*, 465 U.S. at 363, 104 S.Ct. at 1105 (quoting *Helvering*, 303 U.S. at 402, 58 S.Ct. at 634) also quoted in *D.K.G. Appaloosas*, 829 F.2d at 543. Finally, we note the existence of 21 U.S.C. § 853, which is an express criminal forfeiture provision enacted by Congress in 1984. The fact that the statute "contains two separate and distinct provisions impos-

ing sanctions and that these appear in different parts of the statute, helps to make clear the character of that here invoked," where the other is "obviously a criminal one." *Helvering*, 303 U.S. at 404, 58 S.Ct. at 635, quoted in *D.K.G. Appaloosas*, 829 F.2d at 543. Accord *United States v. $39,-000 in Canadian Currency*, 801 F.2d 1210, 1219 (10th Cir.1986).

Having concluded that Congress clearly intended § 881 to be a remedial civil sanction rather than a criminal punishment, we must now determine whether "the clearest proof" exists that the purpose or effect of the forfeiture is so punitive that it negates the Congressional intent. As noted by the Fifth Circuit in *D.K.G. Appaloosas*, 829 F.2d at 544:

> Only two factors appear to even raise the argument that section 881 is overwhelmingly punitive. First is the legislative history to section 881(a)(6), which focuses on the "penal nature of forfeiture statutes," Joint Explanatory Statement of Titles II and III, 124 Cong. Rec. S17647 (daily ed. Oct. 7, 1978), *reprinted in* 1978 U.S.Code Cong. & Adm. News 9496, 9518, 9522–23, second is one of the factors designated as "helpful" by the Court in *One Assortment of 89 Firearms*—the fact that the actions which give rise to forfeiture proceedings under section 881 may themselves entail criminal penalties.

We agree with that court's conclusion that these factors are "less than compelling." It has been long recognized that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." *Helvering*, 303 U.S. at 399, 58 S.Ct. at 633. Congress has here chosen to do just that. Section 881 covers a broader range of conduct than is proscribed by § 853. See *One Assortment of 89 Firearms*, 465 U.S. at 363–364, 104 S.Ct. at 1105–1106. In doing so, it reflects its primarily remedial purpose which includes removing the incentive to engage in the drug trade by denying drug dealers the proceeds of illgotten gains, stripping the drug trade of its instrumentalities, including money, and financing Government programs designed to eliminate drug trafficking. *Premises Known as 2639 Meetinghouse*, 633 F.Supp. at 994 (citing 95th Cong., 2d Sess., 124 Cong. R. 23055–23057; 7 U.S. Code Cong. R. & Ad.News, 9496, 9523 (1978)).

Upon careful consideration of all the aforementioned factors, we agree with those courts which have found that § 881 is not so punitive in either purpose or effect as to require it to be considered a criminal provision. *D.K.G. Appaloosas*, 829 F.2d 532; *Premises Known as 2639 Meetinghouse*, 633 F.Supp. 979. Also, *United States v. $2,500 in United States Currency*, 689 F.2d 10 (2d Cir.1982), *cert. denied sub nom. Aponte v. United States*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984); *United States v. One 1970 Pontiac GTO, 2 Door Hardtop*, 529 F.2d 65, 66 (9th Cir.1976) (per curiam); and *United States v. 30.80 Acres, Bruce Twp., Guilford City, N.C.*, 665 F.Supp. 422 (M.D. N.C.1987). We therefore conclude that the claimants in a § 881 forfeiture action are not entitled to the wide range of constitutional protections afforded to a criminal defendant. Specifically, we conclude that they are not entitled to the protection that the presumption of innocence provides, nor are they entitled to impose upon the United States the burden of proof beyond a reasonable doubt. Congress may, therefore, place the burden of proof by a preponderance of the evidence upon the claimant, once the United States has established probable cause. *$2,500 in United States Currency*, 689 F.2d 10; *One 1970 Pontiac GTO*, 529 F.2d 65; *30.80 Acres*, 665 F.Supp. 422; and *Premises Known as 2639 Meetinghouse*, 633 F.Supp. 979. See also *United States v. $250,000 in United States Currency*, 808 F.2d 895 (1st Cir.1987); and *Bramble v. Richardson*, 498 F.2d 968 (10th Cir.1974), *cert. denied sub nom. Bramble v. Saxbe*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). Similarly, because § 881 is not a criminal sanction, claimants' argument that forfeiture herein would constitute cruel and unusual punishment in that it is disproportionate to the misuse of property, is without merit. Nor do we find

any merit in the claim that § 881 is unconstitutional for providing for the taking of property without compensation. Finally, we also conclude that due to the civil nature of § 881, the double jeopardy clause is inapplicable to an action brought under that section. *One Assortment of Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361. See also *United States v. Mendoza*, 473 F.2d 692 (5th Cir.1972).

## II. CLAIM OF RICHARD DiLORETO.

Having rejected all of the claimants' constitutional objections to § 881, and claimant Richard DiLoreto having indicated that he will present no evidence to rebut the United States' showing of probable cause, we conclude as a matter of law that the United States is entitled to judgment in its favor as to Richard DiLoreto's claim.

## III. CLAIM OF JANE DiLORETO—INNOCENT OWNER EXEMPTION.

Section 881(a)(7) provides an exemption from forfeiture for those whom are commonly referred to as "innocent owners:"

... no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

■ In providing for this exemption, Congress clearly evidenced in its language its intent to place the burden of proof upon the claimant asserting it. The government need not prove that the claimant had actual knowledge. Rather, it is the claimant's responsibility to prove the absence of actual knowledge. *United States v. Four Million Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 907 (11th Cir.1985). Nevertheless, Claimant Jane DiLoreto argues that property held by tenants by the entireties can only be forfeited upon a greater showing of criminal culpability on behalf of both spouses. We cannot agree. Congress clearly and unequivocably indicated what the relevant inquiry should be. In doing so, it did not distinguish between a claim of innocent ownership by a spouse as opposed to such a claim by any other person. Similarly, we are not aware of any court, which in considering § 881(a)(7), has found that any different standard should apply to spouses holding property as tenants by the entireties. We conclude that the relevant inquiry herein, is that which was clearly provided for by Congress—whether Jane DiLoreto can establish by a preponderance of evidence that she did not have knowledge of or consent to Richard's use of the properties to facilitate the distribution of cocaine. See *United States v. 30.80 Acres, Bruce Twp., Guilford City, N.C.*, 665 F.Supp. 422 (M.D.N.C.1987) and *United States v. 124 East North Ave., Lake Forest, Ill.*, 651 F.Supp. 1350 (N.D.Ill. 1987).

■ On January 10, 1989, a non-jury trial was held by this Court in which Jane DiLoreto was given a full opportunity to attempt to establish her entitlement to the innocent owner exemption. Pursuant to Fed.R.Civ.P. 52(a), we now present our findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Richard DiLoreto was a member of a large scale conspiracy to distribute cocaine, from the Spring of 1983 until January 16, 1987.

2. The property at 708–710 West Ninth Street was purchased by Richard and Jane DiLoreto in January of 1980.

3. The property at 6109 Grubb Road was purchased by Richard and Jane DiLoreto in July of 1986.

4. At the time the conspiracy began, and until sometime in or around July 1986, Richard and Jane resided in the West Ninth Street property with their children.

5. In or around July 1986, Richard, Jane, and their children began residing at the property on Grubb Road.

6. During the period from the Spring of 1983, until and after July 1986, Richard DiLoreto stored large quantities, up to kilograms, of cocaine at the West Ninth Street property.

7. These quantities of cocaine were most often stored in the basement of the West Ninth Street residence, often in or around a workbench.

8. During the period from approximately July 1986 to January 1987, Richard continuously stored large quantities, up to kilograms, of cocaine at the Grubb Road property.

9. These quantities of cocaine were stored in numerous locations throughout the house on Grubb Road, including a safe box in Richard and Jane's bedroom closet, in a pillar in the downstairs of the house, and in hunting jackets.

10. During the period from January 1980, until and after July 1986, Richard made numerous sales of cocaine from the West Ninth Street property including at least 100 sales to Timothy McConnell over approximately two years, and six to ten sales to Edward Vereb. In addition, cocaine was supplied to Renee Sanders by Sebastian Ambrogio on one occasion at the West Ninth Street property.

11. These transactions at West Ninth Street usually occurred in the basement, which had a separate outside entrance.

12. During the period from approximately July 1986 to January 1987, Richard made numerous sales of cocaine from the Grubb Road property including approximately 20–25 sales to Timothy McConnell, approximately six sales to Edward Vereb, as well as an exchange of an ounce of cocaine for electrical work performed by Vereb. In addition, Renee Sanders received cocaine from Sebastian Ambrogio at the Grubb Road property five or six times.

13. These transactions at Grubb Road usually occurred in the basement or garage.

14. Richard realized relatively significant financial gains from the sale of cocaine, including having sold at least $44,200 worth of cocaine in 1986, while having reported only $23,800 total income and only $12,600 taxable income for that year.

15. None of the aforementioned sales of cocaine ever occurred in the presence of Jane, nor was she ever observed with any cocaine in her possession.

16. Many of Timothy McConnell's numerous visits to both residences were very brief and for no other reason than the purchase of cocaine.

17. On one occasion Jane asked McConnell to pay Richard the money he owned him. At the time McConnell owed Richard a large sum for cocaine.

18. Jane testified that her request of McConnell was in reference to money which had been loaned to McConnell for the payment of his mortgage. (McConnell was married to Jane's sister).

19. Sebastian Ambrogio testified that prior to July 1986, he had discussions with Jane clearly evidencing that she had knowledge of Richard's drug trafficking.

20. Jane testified that she did not have any conversations with Ambrogio until after January 16, 1987.

21. Jane further testified that she never suspected that Richard was involved in the sale of cocaine until about January 8, 1987, and that she did not really find out until January 16, 1987.

22. Jane's testimony herein, is highly incredible in light of the overwhelming evidence that Richard stored large quantities of cocaine, and engaged in a continuous large scale and lucrative distribution of that substance from both residences for a period of nearly four years.

23. Based upon all of the evidence presented herein, and with close attention to the credibility of all the witnesses, we find that Jane either knew of her husband's involvement in the sale of cocaine, or else deliberately blinded herself to it.

## CONCLUSIONS OF LAW

In accordance with our findings of fact herein, we conclude that Jane has failed to

meet the burden of showing that the use of the properties to facilitate the distribution of cocaine was without her knowledge or consent. Therefore, as a matter of law, Jane does not qualify as an innocent owner as contemplated in § 881(a)(7), and her interest in both properties is forfeitable.

## IV. CLAIMS OF CHILDREN OF RICHARD AND JANE DiLORETO—STANDING.

■ Claims have been filed on the behalf of the five minor children of Richard and Jane DiLoreto. It is asserted that they have a possessory and a future interest in both properties, and that they are entitled to exemption from forfeiture as innocent owners. It is clear that the children, by virtue of their ages (1, 3, 5, 7 and 10 years) must be regarded as having neither knowledge of, nor consented to their father's illegal activities. Therefore, were the children to have standing to assert claims herein, they would clearly be entitled to the protection of the innocent owner exemption. The United States, however, has moved to strike the claim of the children, asserting that they lack standing to assert any claim to the properties.

In support of its motion, the United States relies upon the case of *United States v. Miscellaneous Jewelry*, 667 F.Supp. 232 (D.Md.1987). In that case, the court considered the question of whether the minor heirs of the deceased property owner, had standing to assert claims against certain seized property, and concluded that they did not. In so concluding, the court correctly noted that:

> by the plain language of section 881(a)(6), [The language of § 881(a)(7) in this regard is identical] in order to assert the defense of innocent owner, the individual must establish that he had an ownership interest in the property at the time of the unlawful act.

*Miscellaneous Jewelry*, 667 F.Supp. at 247. Here, as in that case, the most the minor children had at the time of the illegal acts, was a mere expectancy of inheritance. Moreover, some of the child claimants herein, had yet to be born at that time and as such did not even have that. Nevertheless, claimants attempt to distinguish this case from *Miscellaneous Jewelry* on two points. First they argue that that case was concerned with § 881(a)(6) while we are concerned with § 881(a)(7). Noting that the pertinent language of both subsections is identical we find no basis for any distinction. Secondly, they point to the "unique claim that minor children might assert to *real* property." (emphasis added). They further note the parents "inherent duty to provide them with shelter." We note, however, that parents also have an "inherent duty" to provide their children with food. Surely, therefore if the children have no standing to challenge the forfeiture of cash which could provide both food and shelter for them, they have no greater standing when it comes to the forfeiture of real property. We are unable therefore to perceive any real distinction between a forfeiture of real as opposed to personal property.

While we are not unmindful of the grave consequences arising from the forfeiture of a "family home" where minor children are involved, we are constrained by the clear language of the statute. If some further exemption is to be carved out of § 881 for the benefit of minor children, it must be done by Congress. We therefore conclude that the minor children lack standing herein, to assert any claim to either property.

An appropriate order consistent with this opinion will be entered.

## ORDER

AND NOW, this 14th day of March, 1989, IT IS ORDERED that:

1) Claimants' motion for a directed verdict is DENIED;

2) The United States' motion to strike the claims of Nicolina, Elizabeth, Jessica, Tessa and Richie DiLoreto is GRANTED; and

3) The interests of claimants Richard and Jane DiLoreto in both parcels of real property along with the buildings and improvements erected thereon,

are hereby forfeited to the United States.