**UNITED STATES of America**

v.

**Gloria ZUNIGA**

No. 92–231–CR–T–23C.

United States District Court,
M.D. Florida,
Tampa Division.

April 5, 1993.

James Preston, Jr., Asst. U.S. Atty., Tampa, FL, for plaintiff.

Omar F. Medina, Tampa, FL, for defendant.

### ORDER OF FORFEITURE

MERRYDAY, District Judge.

This case is before the Court for a determination of whether the defendant, Gloria Zuniga, has forfeited her interest in her home under a criminal forfeiture statute, 21 U.S.C. § 853. On February 11, 1993, a jury found Ms. Zuniga guilty of the charges alleged in Counts One and Two of the indictment. Ms. Zuniga waived her right to a jury trial on the forfeiture allegations of the indictment and the Court conducted a forfeiture hearing on February 12, 1993.

The United States seeks forfeiture of Ms. Zuniga's interest in the following:

Real property, with appurtenances and improvements, located at 9664 S.W. 156th Court, Miami, Florida, with a legal description of Lot 12, Block 1, of WEITZER HAMMOCK HOMES, Section One, according to the Plat thereof, as recorded in Plat Book 140, at Page 3, of the Public Records of Dade County, Florida.

This property was the home of Ms. Zuniga and her co-defendant, Ivan Dario Serna.[1] Oliver Ivan Serna, the minor child of Ms. Zuniga and Mr. Serna, also lived at the home. Defense counsel stated at the hearing that the home was severely damaged in 1992 by Hurricane Andrew, but that it was under repair. Defense counsel also stated that when repairs of the home were completed, the defendants' child would live at the home with his aunt, Mr. Serna's sister, who is caring for the child.

■ The United States seeks forfeiture under 21 U.S.C. § 853(a)(2), which provides that a person convicted of violating certain felony drug statutes shall forfeit "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation."[2] The United States argues that ten (10) telephone calls made from the home to an undercover agent constitute use of the home under the statute and therefore render Ms. Zuniga's interest in the home subject to forfeiture. The United States asserts that the only purpose of these calls was to commit, or to facilitate the commission of, the drug offenses charged in the indictment.

At the forfeiture hearing, the United States introduced as Exhibit F1 a telephone toll analysis of calls made from the home. The United States derived this analysis from telephone toll records, which were introduced as Exhibit 9 during the trial of Counts One and Two. An examination of the exhibits reveals that of the ten calls from the home to the undercover agent, six were calls to the agent's beeper, two were calls to his cellular telephone, and two were calls to his room at an Embassy Suites Hotel in New York. The calls were made over a four-day period, July 27–30, 1992.

The language of 21 U.S.C. § 853(a)(2) is identical, in relevant part, to the language of 21 U.S.C. § 881(a)(7), which provides for the civil forfeiture of real property "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment...." Thus, the government's burden under both statutes is identical.

[However, t]he United States Courts of Appeals disagree on what the government must show to prove probable cause for forfeiture of real property under section 881(a)(7). The First, Fourth, and Eighth Circuits hold that the government must prove that the real property had a "substantial connection" to the illegal activity.... The Seventh Circuit, on the other hand, has rejected the substantial connection test, and instead requires the government to show only that the real property had "more than an incidental or fortuitous connection" to the crime.

*United States v. Approximately 50 Acres of Real Property,* 920 F.2d 900, 902 (11th Cir. 1991) (per curiam) (citations omitted). The Eleventh Circuit "has not expressly adopted either standard for forfeiture under section 881(a)(7)." *Id.* However, district courts in the Eleventh Circuit have applied the substantial connection test in forfeiture actions under section 881(a)(7), extending the Eleventh Circuit's holding that the substantial connection test applies in forfeiture actions under 21 U.S.C. § 881(a)(4).[3] *Id.*

For the purposes of this Order, the Court need not determine which standard applies in

---

**1.** In an oral plea agreement, Mr. Serna agreed to forfeit his interest in the home. *See* "Motion and Brief of the United States for a Preliminary Order of Forfeiture" (Doc. 90), filed on March 5, 1993.

**2.** The United States does not contend that the defendants purchased the home with proceeds from drug transactions or other illegal activities.

Therefore, the home is not subject to forfeiture under 21 U.S.C. § 853(a)(1).

**3.** The Eleventh Circuit also applies the substantial connection test in forfeiture actions under 21 U.S.C. § 881(a)(6). *See United States v. One Single Family Residence,* 933 F.2d 976, 979 (11th Cir.1991).

forfeiture actions under 21 U.S.C. § 853(a)(2) because the Court finds that Ms. Zuniga's interest in the home is subject to forfeiture under either standard. The evidence of use of the telephone in the home to communicate with the undercover agent demonstrates that the home was used, in part, "to commit, or to facilitate the commission of," the drug offenses charged in the indictment. *See United States v. One Parcel of Real Estate*, 903 F.2d 490 (7th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). The use of the telephone substantially connected the home to the offenses of which Ms. Zuniga was convicted. The home thus had more than an *incidental or fortuitous* connection to the offenses. Accordingly, Ms. Zuniga's interest in the home is forfeited under 21 U.S.C. § 853(a)(2). The United States shall dispose of Ms. Zuniga's interest according to law.

In ordering forfeiture, the Court follows the mandates of 21 U.S.C. § 853(a)(2) and the case law interpreting both that statute and the civil forfeiture statute, 21 U.S.C. § 881(a)(7), which contains similar language. However, in its consideration of this matter, the Court thoroughly reviewed the statutes and case law to determine if a mechanism existed to protect the innocent minor child of the defendants. Because both of the child's parents face lengthy prison terms, the child effectively is orphaned while his parents remain imprisoned. The child is a toddler and counsel for the United States stated at the forfeiture hearing that the child likely will become an adult before his parents are released from prison. The Court sought a way to ensure some measure of support for the child, until he reaches the age of majority, to prevent his becoming financially dependent upon the United States or the State of Florida.

■ At the forfeiture hearing, the Court discussed with counsel the possibility of es-

tablishing a guardianship or trust for the benefit of the child. The proceeds from the sale of the home would be paid into the trust and would be disbursed only to pay for the child's essential needs. Any funds remaining when the child reaches the age of majority would be transferred to the United States. However, the United States would not agree to a trust arrangement. After review of the statutory and case law, the Court finds that it has no authority, absent agreement by the United States, to direct the establishment of a trust.

The Court reviewed cases discussing whether a child has an interest in forfeitable property, which interest would allow the child to assert an "innocent owner" defense under 21 U.S.C. § 881(a)(7).[4] In these cases, the courts found that unless state law creates a valid property interest in the children, they do not have standing to assert the defense. Unfortunately for the defendants' child, he has no apparent legal interest in his home.

In sum, 21 U.S.C. § 853 provides no protection for the defendants' minor child, and case law interpreting this statute and the analogous civil forfeiture statute also provides no protection. Although the result is harsh, it is mandated by law, which it is this Court's duty to follow. As another district court has aptly stated:

> While we are not unmindful of the grave consequences arising from the forfeiture of a "family home" where minor children are involved, we are constrained by the clear language of the statute [21 U.S.C. § 881(a)(7) ]. If some further exemption is to be carved out of § 881 for the benefit of minor children, it must be done by Congress.

*United States v. Parcel of Real Property*, 708 F.Supp. 698, 704 (W.D.Pa.1989). Accordingly, the Court commends to Congress consideration of amendments to the forfeiture statutes to protect innocent minor children when

---

4. *See, e.g., United States v. One Parcel of Property*, 959 F.2d 101, 103–04 (8th Cir.1992) ("The future expectation of ownership by a child is insufficient to give a claimant standing."); *United States v. Santoro*, 866 F.2d 1538, 1545 (4th Cir. 1989) (separation agreement expressly placed property in trust for children, thus children were beneficial owners with standing); *United States*

*v. One Rural Lot*, 739 F.Supp. 74, 78 (D.P.R. 1990) (neither obligation of father to support his children nor "a mere expectancy of inheritance" provides children with standing); *United States v. Parcel of Real Property*, 708 F.Supp. 698, 704 (W.D.Pa.1989) ("a mere expectancy of inheritance" does not provide children with standing).

their parents commit offenses that render their home subject to forfeiture.

ORDERED.