[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15133
Non-Argument Calendar
_____

D.C. Docket No. 1:94-cr-01009-MP-GRJ-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLAUDE LOUIS DUBOC,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 11, 2012)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Claude Louis Duboc appeals the district court's amendment to an existing criminal forfeiture order to include two Thailand condominiums Duboc owns. After review, we affirm.

## I.  BACKGROUND

### A.  1999 Initial Forfeiture Order

In 1994, Duboc was charged with drug trafficking and money laundering between 1982 and 1994.  Duboc pled guilty to (1) conspiring to import marijuana into the United States, in violation of 21 U.S.C. §§ 952, 960(b)(1)(G), and 963, and (2) conspiring to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(2)(A) and (g).  The district court sentenced Duboc to one term of life imprisonment and one term of 240 months' imprisonment.

At Duboc's 1998 sentencing, the district court also found that Duboc had no legitimate source of income and that Duboc's assets were acquired either directly or indirectly from his drug trafficking.  In 1999, pursuant to 21 U.S.C. § 853, the district court ordered Duboc to forfeit (1) $100 million in proceeds of the crimes for which Duboc was convicted, less the value of any property forfeited to date, and (2) a list of specified assets, including automobiles, bank accounts, and real estate, which were also proceeds of Duboc's crimes.  The district court retained jurisdiction so that the government could move for amendments to the forfeiture

2

order to include newly discovered property and to substitute assets.  See Fed. R. Crim. P. 32.2(e)(1).

In 2000, Thailand "restrained" two condominiums in Thailand (the "Thailand condos") that Duboc owned in response to a request by the United States under the Mutual Legal Assistance Treaty ("MLAT") between Thailand and the United States.

## B.  2011 Amended Forfeiture Order

In 2011, the government moved to amend the 1999 forfeiture order to include the Thailand condos.  The government claimed that Duboc, who is still incarcerated, acquired these properties when he was engaged in drug trafficking and that Duboc had no legitimate explanation for the source of the funds used to purchase the Thailand condos.  Accordingly, the government contended that the Thailand condos were subject to forfeiture (1) in satisfaction of the $100 million judgment; (2) as proceeds of Duboc's crimes of conviction, pursuant to 21 U.S.C. § 853(a)(1); and (3) as substitute assets, pursuant to 21 U.S.C. § 853(p).  The government further argued that Duboc was collaterally estopped from relitigating his conviction and the 1999 forfeiture order.

Proceeding pro se, Duboc responded to the government's motion.  The district court granted the government's motion.  In its order, the district court

3

applied 21 U.S.C. § 853(d), which establishes a rebuttable presumption that property of a person convicted of certain crimes is subject to forfeiture if the property was acquired during the period covered by the crime and there is no likely source for the property other than the crime. The district court determined that this presumption of forfeiture applied because (1) the Thailand condos were acquired during the period covered by Duboc's indictment; (2) the district court had previously found that Duboc had no significant legitimate income to justify his wealth; (3) Duboc had identified no persuasive legitimate source for the acquisition of the Thailand condos; and (4) the district court had found that Duboc profited in the amount of $100 million from his criminal activity. See 21 U.S.C. § 853(d). Alternatively, the district court found that the Thailand condos could be forfeited as substitute assets in partial satisfaction of the $100 million judgment, pursuant to 21 U.S.C. § 853(p).

Duboc appeals pro se. Duboc argues that the district court erred by amending the forfeiture order because (1) the Thailand condos were not purchased with proceeds from drug shipments into the United States, and collateral estoppel does not bar him from litigating issues decided in his earlier criminal proceeding; (2) the amendment to the forfeiture order was barred by the statute of limitations or the doctrine of laches; (3) Duboc's due process rights were violated by the 11-

4

year delay between Thailand's 2000 restraint of the Thailand condos and the government's 2011 motion to amend the forfeiture order; and (4) the MLAT between Thailand and the United States renders void the district court's amended order with respect to the Thailand condos.[1]  We review these issues in turn.

## II.  DISCUSSION

### A.  Forfeiture Order Amendment[2]

Under 21 U.S.C. § 853(a)(1), anyone convicted of violating, inter alia, 21 U.S.C. §§ 952, 960(b)(1)(G), and 963 shall forfeit "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."  Federal Rule of Criminal Procedure 32.2 requires the district court to determine what property is subject to forfeiture, and, if the government identifies specific property, whether the government has established the requisite nexus between the property and the offense.  Fed. R. Crim. P. 32.2(b)(1)(A).  The district court may amend a forfeiture order at any time.  Fed. R. Crim. P. 32.2(e)(1)

---

[1] Although Duboc's notice of appeal is untimely, the government waived this issue by failing to raise it in its initial brief.  United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004); see also United States v. Lopez, 562 F.3d 1309, 1312–13 (11th Cir. 2009) (holding that an untimely notice of appeal filed by a criminal defendant does not deprive the court of appeals of jurisdiction).

[2] This Court reviews de novo the district court's legal conclusions regarding forfeiture, and it reviews the district court's findings of fact for clear error.  United States v. Puche, 350 F.3d 1137, 1153 (11th Cir. 2003).  This Court reviews de novo the application of collateral estoppel.  United States v. Weiss, 467 F.3d 1300, 1308 (11th Cir. 2006).

(stating that the district court may "at any time enter an order of forfeiture or amend an existing order of forfeiture").

In addition, 21 U.S.C. § 853(d) establishes a rebuttable presumption that any property of the defendant is subject to forfeiture if the government establishes by a preponderance of the evidence that (1) the defendant acquired the property during the time of, or within a reasonable time after, the criminal activity, and (2) there was no likely source for the property other than the criminal activity.

Here, the district court did not err by amending the forfeiture order.  Under 21 U.S.C. § 853(d), Duboc's Thailand condos were presumptively subject to forfeiture because the district court found that (1) Duboc acquired the Thailand condos during the time covered by his convictions for violating 21 U.S.C. §§ 952, 960(b)(1)(G), and 963, which are offenses covered by § 853(a); and (2) Duboc had no legitimate source of income during the time in question and had gained over $100 million from his criminal activity, see id. § 853(d)(2).  Accordingly, Duboc bore the burden of rebutting the presumption that the Thailand condos were subject to forfeiture.

To the extent Duboc now argues that he had a legitimate source of income to account for his acquisition of the Thailand condos, this issue is (1) the same issue the district court decided at Duboc's 1998 sentencing; (2) actually litigated at

6

Duboc's 1998 sentencing; and (3) critical and necessary to the district court's decision at Duboc's 1998 sentencing that Duboc's property was subject to forfeiture.  Accordingly, the doctrine of collateral estoppel precludes Duboc from relitigating the district court's finding at Duboc's sentencing that Duboc had no legitimate income to justify his wealth.  See United States v. Jean-Baptiste, 395 F.3d 1190, 1194–95 (11th Cir. 2005) (explaining that collateral estoppel bars a criminal defendant from relitigating issues necessarily decided in his criminal trial).

In any event, even if Duboc were entitled to relitigate this issue, Duboc fails to show that "there was no likely source for" the Thailand condos other than proceeds of the crimes for which he was convicted.  21 U.S.C. § 853(d)(2).  Duboc argues that he was convicted only with respect to drugs he imported into the United States and that only 2.4 percent of the $100 million he earned was attributable to drugs he imported into the United States.  But even assuming Duboc's figure is accurate, this figure alone does not show that the Thailand condos were not purchased with the proceeds of the crimes for which Duboc was convicted.[3]  Indeed, by Duboc's own math, he realized $2.4 million from these

---

[3] The government points out that the district court never made a finding that the profits attributable to Duboc's importation of drugs into the United States was limited to 2.4 percent of $100 million.

7

crimes.

The Thailand condos are thus subject to forfeiture under 21 U.S.C. § 853(a)(1) and (d).

## B.  Statute of Limitations and Laches[4]

Duboc next claims that the government's motion to amend the forfeiture order was barred by the statute of limitations and the equitable doctrine of laches.

As to the statute of limitations, Duboc relies on 19 U.S.C. § 1621, which states that any suit or action to recover any "forfeiture of property accruing under the customs laws" must be brought within five years of the time when the offense was discovered.  However, § 1621 applies to in rem civil forfeiture proceedings, not in personam criminal forfeiture judgments, and is therefore inapplicable here. See United States v. Carrell, 252 F.3d 1193, 1198–99 (11th Cir. 2001) (identifying § 1621 as a civil forfeiture statute applicable in civil in rem forfeiture proceedings); United States v. Bissell, 866 F.2d 1343, 1348 n.3 (11th Cir. 1989) ("A criminal forfeiture [under 21 U.S.C. § 853] operates in personam against the defendant, serving as a penalty upon conviction.  A civil forfeiture operates in rem

---

[4] This Court reviews de novo the district court's interpretation and application of the statute of limitations.  United States v. Harriston, 329 F.3d 779, 783 (11th Cir. 2003).  Although this Court has not specified the standard of review that applies to the defense of laches in a criminal forfeiture case, whether the doctrine of laches applies in a civil case is an issue of law reviewed de novo.  See Peter Leterese & Assoc., Inc. v. World Inst. of Scientology Enter., 533 F.3d 1287, 1319 n.38 (11th Cir. 2008).  We thus review de novo Duboc's laches argument.

8

against the property itself under the theory that the property is guilty of wrong-doing.").

Even if § 1621 were applicable, the statute of limitations would be tolled because the Thailand condos are not located in the United States. See 19 U.S.C. § 1621(2) ("[T]he time of the absence from the United States of the person subject to the penalty or forfeiture, or of any concealment or absence of the property, shall not be reckoned within the 5-year period of limitation."); United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain, 295 F.3d 23, 27 (D.C. Cir. 2002) (concluding that action under § 1621 was commenced during the "absence of the property" because property was located outside of United States).

Duboc's laches argument also fails because the United States is generally not subject to the defense of laches when it enforces its rights. See United States v. Summerlin, 310 U.S. 414, 416, 60 S. Ct. 1019, 1020 (1940) ("It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights."); United States v. Delgado, 321 F.3d 1338, 1349 (11th Cir. 2003) (noting that "rare exceptions to this [Summerlin] rule" apply only in civil cases and "ha[ve] never been applied in a criminal context"). Here, the conduct of the government was the government's enforcing its rights to seize property Duboc

9

obtained with the profits of an international drug trafficking operation.  See

Bissell, 866 F.2d at 1349 (recognizing the "principle that the fruits and

instrumentalities of a crime do not belong to the criminal, but rather to the

government").

In any event, as noted above, Federal Rule of Criminal Procedure 32.2(e)(1)

permits the district court to amend a criminal forfeiture order "at any time" on

motion by the government.  As of 2009, the $100 million judgment had not been

fully satisfied.  And no provision of 21 U.S.C. § 853 or the Federal Rules of

Criminal Procedure otherwise limits the time during which the government may

move to amend an existing criminal forfeiture order to seize property subject to

forfeiture under § 853.  See United States v. Baker, 227 F.3d 955, 970 (7th Cir.

2000) (explaining that a criminal forfeiture order is an in personam judgment

enforceable "for the balance of [the defendant's] prison term and beyond").

## C.  Due Process and Notice[5]

Duboc argues next that the 11-year delay between the United States's 2000

request that Thailand restrain the Thailand condos and its 2011 motion to amend

---

[5] This Court reviews questions of constitutional law de novo.  United States v. Paige, 604
F.3d 1268, 1274 (11th Cir. 2010).

10

the 1999 forfeiture order violated his Fifth Amendment due process rights.[6]

Duboc cites Supreme Court and other federal court of appeals cases holding that

due process requires the government to commence property forfeiture proceedings

without undue delay. See, e.g., United States v. Eight Thousand Eight Hundred

and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 562–70, 103

S. Ct. 2005, 2011–15 (1983); Ivers v. United States, 581 F.2d 1362, 1368 (9th Cir.

1978). The problem for Duboc is that the cases he cites are civil, not criminal,

forfeiture cases. For this reason, they do not establish the due process rights of

criminal defendants in cases such as Duboc's, where the government seeks the

post-conviction forfeiture of proceeds of criminal activity.

We need not decide what particular due process rights such convicted

criminal defendants enjoy because the procedures used in this particular case,

which were consistent with 21 U.S.C. § 853, were constitutionally adequate.

These procedures included (1) notice and a hearing after Duboc pled guilty and

before the district court entered the 1999 criminal forfeiture order; and (2) notice

---

[6] Duboc also claims that he did not receive notice of the government's motion to amend the forfeiture order to include the Thailand condos. This argument is without merit. Duboc initially received an incomplete copy of the government's motion and did not respond. The district court then granted the government's motion. Duboc then received a complete copy of the government's motion and the district court granted Duboc an extension of time to respond. Duboc responded, and the district court, "upon consideration of the defendant's objections," found that "nothing in the objections justify revisiting the prior decision amending the order of forfeiture."

11

and an opportunity to respond to the government's 2011 motion to amend the 1999 forfeiture order to include the Thailand condos.  To the extent Duboc argues that he was entitled to a hearing sooner than 11 years after the government first arranged for the "restraint" of the Thailand condos, Duboc makes no showing that he was prejudiced at all by this delay.  See Bissell, 866 F.2d at 1354.

## D.  MLAT Challenge[7]

Duboc's final argument is that the United States and Thailand did not comply with the MLAT in 2000 when Thailand restrained the condos in response to a request by United States authorities.  Duboc thus claims that the district court's amended order is void as applied to the Thailand condos.

This argument lacks merit.  The MLAT provides for "mutual assistance" between Thailand and the United States with respect to criminal law enforcement. Treaty on Mutual Assistance in Criminal Matters, U.S.-Thai., art. 1(1), Mar. 19, 1986, S. Treaty Doc. No. 100-18.  This treaty defines "assistance" as including, inter alia, "assisting in forfeiture proceedings."  MLAT, art. 1(2)(h).  The MLAT specifically states that "[a] private party may not rely upon any provision of this Treaty to impede the execution of a request, or to exclude or suppress evidence

---

[7] The interpretation of a treaty is a question of law that this Court reviews de novo.  Yapp v. Reno, 26 F.3d 1562, 1565 (11th Cir. 1994).

12

obtained under the Treaty." MLAT, art. 1(5). In addition, there is a presumption that international agreements do not create private rights or private causes of action in domestic courts, even when the agreement directly benefits private persons. United States v. Valencia-Trujillo, 573 F.3d 1171, 1180–81 (11th Cir. 2009). This presumption and the plain terms of the MLAT show that Duboc, as a private party, may not use the MLAT as a defense to the forfeiture of the Thailand condos.

### III.  CONCLUSION

For the foregoing reasons, we affirm the district court's order amending the 1999 forfeiture order to include Duboc's Thailand condos.

**AFFIRMED.**

13