[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15793
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00221-MHT-SRW-5

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIE C. MOODY,
a.k.a. Bill,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 28, 2016)

Before HULL, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Willie C. Moody appeals the district court's sentencing order requiring the forfeiture of his property. Upon review of the record and consideration of the parties' briefs, we affirm.

I.

A federal grand jury indicted Moody on charges of: conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Counts 2-4); and using a cell phone in the commission of the conspiracy, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2 (Counts 5-18). The indictment also stated that, upon conviction, Moody shall forfeit pursuant to 21 U.S.C. § 853 two parcels of property located at 9555 Central Plank Road. Parcel 1 (the "large parcel") consists of 162.01 acres and includes a cabin, wooded land, and ponds. Parcel 2 (the "small parcel") consists of 4.62 acres and primarily provides access from Central Plank Road to the large parcel.

The following facts emerged during Moody's trial. Devin Whittle, an agent with the Drug Enforcement Administration, testified that he investigated a possible drug trafficking operation conducted by a man named Mark Elliott. As a result of a wiretap on Elliott's telephone, the investigation widened to include several other participants, including Moody.

2

William Elliott, Mark Elliott's brother and co-conspirator, testified as to the nature of typical drug conversations and explained terms that Mark Elliott and Moody used during phone calls recorded by law enforcement. During one phone call with Mark Elliott, Moody stated, "I just feel safe up here" in "the country," an apparent reference to his cabin on 9555 Central Plank Road. Gov't Ex. 25B at 1-2. William Elliott testified that the phrase "feel safe" meant that Moody did not feel as if he was being watched by law enforcement.

Moody referenced the Central Plank Road property in several other phone calls about buying and selling drugs. In one phone call, Moody told Mark Elliott that he was at his cabin and could meet up later. William Elliot explained at trial that Moody was indicating he wanted to purchase methamphetamine from Mark Elliott. The next day, Moody told Mark Elliott that he was leaving his cabin and would meet Mark Elliott at Walmart. William Elliott testified that the purpose of the phone call was to set up a methamphetamine drug deal. In another telephone call between Mark Elliott and Moody, Moody stated that he was at his cabin and would meet Mark Elliott in a few hours to purchase drugs.

David Slay, a narcotics agent with the county sheriff's department, testified that a confidential informant, Billy Jarrett, arranged to purchase methamphetamine from Moody at 9555 Central Plank Road. During three separate controlled buys, Slay witnessed Jarrett meet Moody at the gate to 9555 Central Plank Road and

3

purchase methamphetamine from Moody.  Moody drove a four-wheeler from within the property to the gate during the second transaction and a tractor during the third.  Each of these transactions occurred on the small parcel of the Central Plank Road property.

Jarrett testified that his relationship with Moody was "just strictly methamphetamine."  He explained that he purchased methamphetamine from Moody at the Central Plank Road property on four to five occasions prior to his work as a confidential informant.  He had been to the property fifteen times and previously had gone inside the cabin at 9555 Central Plank Road.  During the execution of a warrant on Moody's property, the officers found drug paraphernalia and a bag containing drug residue in the cabin.

The jury found Moody guilty on all counts.  Following the jury verdict, the district court held a hearing on the forfeiture of nine firearms and both parcels of land comprising 9555 Central Plank Road.  The district court issued an opinion and order declaring that Moody must forfeit his interest in the real property but not the firearms.

The district court sentenced Moody to 21 months' imprisonment and three years of supervised release.  The district court also ordered that Moody forfeit his interest in the small and large parcels at 9555 Central Plank Road.  Moody appeals the forfeiture of his interest in the large parcel only.

II.

Whether a sufficient factual nexus exists to support a criminal forfeiture is reviewed for clear error. *United States v. Gross*, 213 F.3d 599, 600 (11th Cir. 2000). We review a district court's conclusions of law *de novo*, however. *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000). A district court's choice between two permissible views of the evidence cannot be clear error. *See United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).

III.

Any person convicted of a felony drug offense under Title 21 of the United States Code shall forfeit to the United States "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a)(2). Under Federal Rule of Criminal Procedure 32.2(b)(1)(A), the district court must determine what property is subject to forfeiture and whether the government has established a sufficient nexus between the specific property sought and the offense. *See United States v. Duboc*, 694 F.3d 1223, 1226-27 (11th Cir. 2012). Moody argues that the district court erred in finding that there was a sufficient nexus between the large parcel at 9555 Central Plank Road and his convictions. We find no clear error in the district court's conclusion.

5

The felony drug offense criminal forfeiture statute provides that it is to be liberally construed to effectuate its remedial purposes.  21 U.S.C. § 853(o).  Therefore, even if the property at issue is not directly used to carry out the crime, it may be subject to forfeiture if the jury could have found that it helped the defendant conceal his illegal activity and avoid detection.  *See United States v. Rivera*, 884 F.2d 544, 546 (11th Cir. 1989).  A property facilitates commission of the crime when it "makes the prohibited conduct less difficult or more or less free from obstruction or hindrance."  *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003) (internal quotation marks omitted).  The government need only prove the elements of criminal forfeiture by a preponderance of the evidence.  *United States v. Dicter*, 198 F.3d 1284, 1289-90 (11th Cir. 1999).  Courts undertake a case-by-case inquiry to determine the extent of the property to be forfeited.  *See United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1308 (11th Cir. 1999).[1]

The district court committed no clear error when it concluded that the large parcel of 9555 Central Plank Road was subject to forfeiture because it found a sufficient nexus existed between the large parcel and the sale of methamphetamine.  Testimony and cell phone transcripts show that during the conspiracy, Moody used

---

[1] The case of *817 N.E. 29th Drive* concerns 21 U.S.C. § 881, which governs civil forfeitures of real property.  In relevant part, the language in § 881 is identical to the language in § 853.  Accordingly, case law interpreting § 881 is helpful in determining the scope of criminal forfeitures.  *C.f. United States v. Starrett*, 55 F.3d 1525, 1542 (11th Cir. 1995) (applying a civil RICO case to the criminal RICO context where the statutes included nearly identical language).

his cell phone to arrange drug deals while residing in the cabin on the large parcel, where he felt "safe." The cabin provided Moody with a secluded location, away from law enforcement surveillance, where he could arrange methamphetamine transactions.

Moody argues that the district court erred in relying on cell phone calls from the cabin to establish the nexus between drug sales and the large parcel. According to Moody, his use of his cell phone to arrange methamphetamine transactions was incidental or fortuitous, not facilitating. We disagree.

The district court relied on *United States v. Zuniga* for the proposition that phone calls made from a defendant's home to commit or to facilitate the commission of drug offenses warranted forfeiture of the home. 835 F. Supp. 622 (M.D. Fla. 1993). In *Zuniga*, the district court required a defendant to forfeit her interest in a home because "[t]he evidence of use of the telephone in the home to communicate with the undercover agent demonstrates that the home was used, in part," to facilitate drug offenses. *Id.* at 624. The telephone "substantially connected the home to the offenses." *Id.* Thus, the district court reasoned, the home "had more than an incidental or fortuitous connection to the offenses" and was subject to forfeiture. *Id.* We think this is an appropriate analysis in the light of the broad remedial purpose of the criminal forfeiture statute. *See* 21 U.S.C. § 853(o).

Moody contends we should distinguish *Zuniga* from this case because the defendant in *Zuniga* used a landline telephone, which is physically connected to the house, whereas Moody used a cell phone, which is portable. He suggests that his use of a cell phone was incidental because he could have used a cell phone to make secure phone calls anywhere, not just at a secluded location like the cabin.

Moody's argument ignores the reality that he did not make his phone calls from anywhere—he made them from the cabin at 9555 Central Plank Road. From the cabin Moody regularly arranged the purchase of methamphetamine from Mark Elliott and the sale of methamphetamine to a confidential informant. Moody chose to organize these transactions at the cabin because he felt "safe" in that particular isolated location. The property gave him the confidence to carry out his sales and connected conspiracy without fear of being caught by law enforcement. It is not incidental or fortuitous to coordinate drug sales from the same place at least three times—it is a pattern.

Beyond the cell phone calls, ample evidence supports the conclusion that the large parcel facilitated Moody's methamphetamine operation. Jarrett, who testified that his relationship with Moody was "[j]ust strictly methamphetamine," visited Moody's cabin several times before he became a confidential informant. It would not be clear error for the district court to conclude that Jarrett purchased methamphetamine from Moody—his repeat drug dealer—when he went to the

cabin.  Additionally, during two of the three controlled buys, Moody drove from elsewhere on the property to the gate of 9555 Central Plank Road to meet Jarrett. It is a reasonable inference that Moody waited in the landlocked large parcel for Jarrett to arrive and then drove to the gate via the smaller parcel, which essentially acted as an access road.  The controlled buys with Jarrett need not have occurred on the large parcel for the large parcel to have facilitated Moody's sale of methamphetamine.  *See 817 N.E. 29th Drive*, 175 F.3d at 1309 (11th Cir. 1999) (concluding that the front yard of a house facilitated the sale of drugs even though the defendant sold cocaine only from inside the house).

Because sufficient record evidence supports a finding that the large parcel was used to facilitate Moody's offenses, the district court did not clearly err in ordering forfeiture.

## IV.

For the foregoing reasons, we affirm the district court's order requiring forfeiture of Moody's interest in both parcels of 9555 Central Plank Road.

**AFFIRMED.**

9