[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15240
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-02333-RDP

BLACK DIAMOND LAND MANAGEMENT LLC,

Plaintiff-Appellant,

versus

TWIN PINES COAL INC.,
DRUMMOND COMPANY INC.,
MOLPUS TIMBERLANDS MANAGEMENT
LLC,
SWF BIRMINGHAM LLC,
VALLEY CREEK LAND AND TIMBER LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 24, 2017)

Before HULL, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff's Second Amended Complaint ("Complaint") asserts that Defendants wrongly appropriated coal and timber resources from Plaintiff's land. This appeal concerns whether the district court erred in concluding that Plaintiff's claims do not state federal causes of action under the Lanham Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), or the Sherman Act. Because we agree that Plaintiff's Complaint fails to plead any plausible federal claim for relief supported by sufficient factual allegations, we AFFIRM the district court's dismissal of Plaintiff's Complaint.

## I.    BACKGROUND

We review *de novo* the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Further, we accept the allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Id.* As such, the facts outlined in this section are drawn from the allegations in Plaintiff's Second Amended Complaint.

Plaintiff—Black Diamond Management, LLC—asserts that the various Defendants—Twin Pines Coal Company, Inc., Drummond Company, Inc., Molpus Timberlands Management, LLC, SWF Birmingham, LLC, and Valley Creek Land

2

and Timber, LLC—wrongly collected and sold coal and timber resources that belonged to Plaintiff.  As to Twin Pines, Plaintiff asserts that it sent two letters to Twin Pines claiming ownership over the natural resources being collected by Twin Pines, but that Twin Pines nonetheless continued to collect and sell Plaintiff's resources as if they were owned by Twin Pines.  As to Molpus, SWF, and Valley Creek, Plaintiff simply asserts that these Defendants took and sold Plaintiff's timber without authority to do so and that SWF and Valley Creek "knew or had reason to know that Plaintiff had ownership title to the timber that they took and sold."  For Drummond, Plaintiff asserts that Drummond sent Plaintiff two "blasting notices" concerning Drummond's mining operations.  Plaintiff met with Drummond "concerning Drummond's interest [in] acquiring ownership of Plaintiff's natural resources" and Plaintiff sent two follow up letters to Drummond providing a proposed contract for the purchase of Plaintiff's natural resources, but Drummond continued to mine and sell the coal.  Further, Plaintiff asserts that each Defendant "communicated with the other about their respective—and *joint role*—in misappropriating Plaintiff's natural resources." (emphasis in original).

Plaintiff also avers that U.S. Steel (not mentioned anywhere else in the Complaint) filed a lawsuit against Plaintiff in state court, which issued a final order

establishing boundary lines "that play a significant role in this litigation."[1]

However, Plaintiff does not describe these boundary lines (or any other geographic

demarcations) nor does it identify any deed, title, lease, agreement, court order, or

other instrument establishing its rights over the natural resources it purports to

own.  Nonetheless, Plaintiff asserts that "[i]rrespective of the title to the surface

land, Plaintiff possesses the ownership rights to mineral, coal, timber, and other

natural resources wrongfully taken by Defendants."

Plaintiff brought Alabama state law claims for conversion, negligence, and

civil conspiracy, as well as federal claims under the Lanham Act, RICO, and the

Sherman Act.  Defendants moved to dismiss Plaintiff's Second Amended

Complaint, and the district court granted Defendants' motion.  The district court

reasoned that "what is really in dispute here is not whether Defendants have

violated RICO, the Lanham Act, or the Sherman Act," but instead "the crux of the

dispute between these parties is a legally straight forward (though perhaps factually

complex) state law question: which side has a legal claim (or the superior legal

claim) to the property interests at issue here."  The district court proceeded to

assess each of Plaintiff's federal claims and concluded that Plaintiff had failed to

state a plausible claim for relief under any of those federal laws.  Thus, the district

---

[1] Though not mentioned in the Complaint, this action appears to follow from a long line of state court litigation.  As the district court explained, "the property interests in dispute have intersected (or overlapped) with litigations that took place in Jefferson County Circuit Court (Bessemer Division) for approximately ten years between certain non-parties to this action."

court dismissed Plaintiff's federal claims and declined to exercise supplemental jurisdiction over the remaining state law claims. Plaintiff now appeals that ruling.

## II.    DISCUSSION

### A.    Plaintiff's Lanham Act Claims

Plaintiff first alleges a violation of the Lanham Act under 15 U.S.C. § 1225(a). Plaintiff asserts that Defendants have falsely represented that the allegedly stolen resources are owned by Defendants and that these statements deceived or confused prospective customers in violation of the Act. The statutory provision at issue provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

5

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  "Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014).  Plaintiff's Complaint does not specify which type of Lanham Act claim Plaintiff purports to bring.  This alone might doom Plaintiff's attempt to plead Lanham Act claims, but the claims fail under either theory anyway.

As to false association, the Act "forbids unfair trade practices involving infringement of . . . trademarks, even in the absence of federal trademark registration."  *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (alterations in original).  Nonetheless, Plaintiff must still show that it "had enforceable trademark rights in the mark or name."  *Id.*  To this end, all that Plaintiff pleads is:  "Black Diamond is an unregistered but registerable trademark used by Plaintiff in connection with its coal, coal reserves and/or goods and/or services regarding monetizing the coal reserves.  The same goes for the timber at issue in this case."  However, we are not bound to accept as true such "a legal conclusion couched as a factual allegation" and mere "labels and conclusions . . . will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff's pleading is not sufficient

6

to establish that it had an enforceable trademark right in the Black Diamond name. And further, even if Plaintiff had adequately pled the existence of an enforceable trademark, Plaintiff's Complaint is devoid of any allegations that Defendants made unauthorized use of it or that Defendants "had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (quotation marks omitted); *see also Custom Mfg.*, 508 F.3d at 647 ("[T]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion.").

As to false advertising, Plaintiff is correct that the Lanham Act also "creates a federal remedy 'that goes beyond trademark protection,'" (namely, "a cause of action for unfair competition through misleading advertising or labeling") but Plaintiff has also failed to plead this type of claim. *See POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003)). Most fundamentally, Plaintiff has not sufficiently pled that Defendants made "any *false* designation of origin, *false or misleading* description of fact, or *false or misleading* representation of fact" nor any "commercial advertising or promotion" that "*misrepresents* the nature, characteristics, qualities, or geographic origin" of the coal and timber at

7

issue in this case.  15 U.S.C. § 1125(a)(1) (emphasis added).  Instead, Plaintiff simply asserts in general terms that "Defendants have falsely represented (and continue to falsely represent)" that "the coal and timber reserves are owned by Defendants."

But beyond this conclusory assertion, the Complaint contains no *factual* support for the proposition that Defendants representations are actually *false*.  In other words, the Complaint contains no factual support for the allegation that the resources at issue are actually owned by Plaintiff.  The Complaint asserts that "[i]rrespective of title to the surface land, Plaintiff possesses the ownership rights to mineral, coal, timber, and other natural resources wrongfully taken by Defendants," but again this assertion is conclusory.  There is no mention of any geographic areas, boundaries, tracts of land, deeds of ownership, mining lease agreements, specific instances of collection, or any other factual predicate for Plaintiff's assertion that it owns the amorphous natural resources mentioned in the Complaint.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007).  As such, even assuming that Defendants

8

are representing that they own the coal and timber that they are selling, there is no support for the allegation that these representations are false.

And further, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 134 S. Ct. at 1395.  Plaintiff alleges that "Plaintiff has been damaged by Defendants' false statements" and that "Plaintiff will continue to be damaged by Defendants' false statements" but Plaintiff does not provide any factual support for how or why such an injury to a commercial interest has or will occur.  Certainly, the wrongful conversion of Plaintiff's resources would damage Plaintiff, but that is a matter of state law.  Plaintiff does not plead with sufficient factual specificity how allegedly false *statements about the ownership of the resources* would proximately cause Plaintiff "an injury to a commercial interest in sales or business reputation." *Id.*  Plaintiff has therefore failed to plead a cause of action for a violation of the Lanham Act, and the district court did not err by dismissing these claims.

## B.　Plaintiff's RICO Claims

Plaintiff next attempts to fit its claims into the statutory requirements of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  The district court

did not err in concluding that Plaintiff failed to plead a cause of action under

RICO.

"Essential to any successful RICO claim are the basic requirements of

establishing a RICO enterprise and a 'pattern of racketeering activity.'"  *Jackson v.*

*BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).  To successfully

allege a pattern of racketeering activity, Plaintiff must charge that:  (1) the

defendants committed two or more predicate acts within a ten-year time span; (2)

the predicate acts were related to one another; and (3) the predicate acts

demonstrated criminal conduct of a continuing nature.  *Id.* (emphasis omitted).

Here, Plaintiff "relied on, inter alia, 18 U.S.C. § 2314 to establish two

predicate act violations."[2]  In pertinent part, § 2314 creates criminal penalties for

any person who "transports, transmits, or transfers in interstate or foreign

commerce any goods, wares, merchandise, securities or money, of the value of

$5,000 or more, knowing the same to have been stolen, converted or taken by

fraud."  18 U.S.C. § 2314.  Plaintiff asserts that Defendants violated this provision

[2]  Plaintiff's Second Amended Complaint actually cites four different predicate acts that Defendants allegedly violated, but Plaintiff's Brief contains argument only as to § 2314. Plaintiff mentions facts relevant to the predicate acts of mail or wire fraud in footnote two of its brief, but this passing reference is not sufficient to "plainly and prominently" raise the issue on appeal.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (quoting *United States v. Jernigan,* 341 F.3d 1273 (11th Cir. 2003)); *see also Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1316 n.7 (11th Cir. 2006) (holding that an "argument is waived because it appears only in a footnote in their initial brief and is unaccompanied by any argument"); *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen,* 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) (stating a single footnote in the appellant's initial brief was not sufficient to preserve the issue).

by transporting the allegedly stolen coal and timber across state lines.  However, "in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements" of this crime.  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997).  One such element of a § 2314 violation is "proof of scienter," namely, that "the defendant knew that property was converted or taken by fraud at the time of the transport." *Id.* (quoting *United States v. Montminy*, 936 F.2d 626, 627 (1st Cir. 1991)).  As the district court correctly concluded, Plaintiff failed to plead that Defendants "knew" that the natural resources were stolen when they transported the resources across state lines.

Plaintiff's allegations in support of Defendants' knowledge fall into two general categories.  First is Plaintiff's direct assertions that Defendants violated the statute.  For example, Plaintiff asserts that "Defendants, on multiple occasions closely tied in time, knowingly transported Plaintiff's natural resources (e.g., coal, timber, minerals) that they wrongfully took from Plaintiff to different states and countries outside of Alabama by use of truck, river transportation and railroad transportation."  However, such "formulaic recitation[s] of the elements of a cause of action" are not sufficient to state a claim for relief.  *Iqbal*, 556 U.S. at 678.

Second, Plaintiff points to allegations that it sent letters and notices to particular Defendants indicating that Plaintiff believed Defendants were taking

11

Plaintiff's natural resources.  Plaintiff pleads:  (1) Plaintiff sent two letters of ownership to Defendant Twin Pines claiming ownership of natural resources being taken by Twin Pines; (2) Defendant Drummond sent two "Blasting Notices" to Plaintiff "concerning 'Blasting' with respect to Plaintiff's natural resources;" (3) Defendant Drummond held a meeting with Plaintiff "concerning Drummond's interest acquiring ownership of Plaintiff's natural resources" where it "was pointed out by Drummond that mining had already taken place with respect to natural resources that Plaintiff claims ownership over;" and (4) Plaintiff sent a follow up letter to Drummond one month after the meeting and, eight months later, another letter providing a proposed contract for the purchase of Plaintiff's natural resources.[3]  Taken together, these allegations show that *Plaintiff* believed that the natural resources were owned by Plaintiff, but they do not provide any support for the contention that *Defendants* believed (much less "knew") that the resources were wrongfully taken.

As discussed with regard to the Lanham Act claims, the Complaint is devoid of any factual allegations supporting the contention that the resources taken by the

---

[3]  Indeed, Plaintiff does not point to any letter or notice sent to Defendants Molpus, SWF, or Valley Creek.  As to these Defendants, Plaintiff merely asserts:  "Defendants SWF and Valley Creek knew and had reason to know that Plaintiff had ownership title to the timber that they took and sold."  But like the first category of allegations mentioned above, this is merely an assertion of the elements of the cause of action, and thus does not suffice to state a claim.  Therefore, even if these allegations relating to letters and notices sent by Plaintiff were sufficient to state a claim for a predicate violation of § 2314, Plaintiff's Complaint would still not succeed in alleging RICO violations against Defendants Molpus, SWF, or Valley Creek.

Defendants were *actually* owned by Plaintiff.  The only support for this contention is Plaintiff's bare assertion that it is true.  But as the district court explained:

> [T]here is no way Plaintiff can demonstrate knowledge, or set up a reasonable expectation that discovery will lead to that knowledge, because more than one-and-a-half years after filing this case, Plaintiff itself does not even know where its property purportedly ends and Defendants' property rights begin.  Indeed the very core of this matter is to ask a court to make that determination—not to settle a concrete contested claim, but to obtain an answer in the first instance.

In other words, if Plaintiff does not even know for sure whether it actually owned the resources, then there is no way that Plaintiff can plead that *Defendants knew* that these resources belonged to Plaintiff (and were thus knowingly "stolen, converted or taken by fraud").  18 U.S.C. § 2314.  The dispute as to whether the natural resources actually belong to Plaintiff or Defendants might establish a state law property or conversion claim, but it cannot establish a federal RICO claim based upon predicate violations of § 2314.  Therefore, the district court did not err in dismissing Plaintiff's RICO claims.[4]

---

[4]  Because we conclude that Plaintiff failed to sufficiently plead predicate violations of § 2314—which is necessary to support Plaintiff's RICO claims—we need not reach whether Plaintiff also sufficiently plead the existence of a "RICO enterprise" or that the allegedly converted natural resources were transported across state lines.  *See Boyle v. United States*, 556 U.S. 938, 950 (2009) (noting that RICO liability demands "the creation of an 'enterprise'—a group with a common purpose and course of conduct—and the actual commission of a pattern of predicate offenses"); 18 U.S.C. § 2314 (criminalizing the transportation, transmission, or transfer of goods "in interstate or foreign commerce").  Though Plaintiff's allegations as to these issues are also quite conclusory, we need not base our holding on these grounds.

### C.    Plaintiff's Sherman Act Claims

Finally, Plaintiff's Second Amended Complaint asserts a violation of the Sherman Antitrust Act, 15 U.S.C. §§ 2 and 3.  The district court concluded that Plaintiff failed to state a claim under either § 2 or § 3, but on appeal, Plaintiff only challenges the district court's holding as to § 3.  Plaintiff's argument is clearly meritless because Plaintiff claims that a restraint of trade occurred in Alabama, not in a "Territory of the United States."

15 U.S.C. § 3 provides:

> Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce <u>in any Territory of the United States</u> or of the District of Columbia, or in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States or foreign nations, is declared illegal.

15 U.S.C. § 3 (emphasis added).  Plaintiff asserts that since the term "territory" is defined in Black's Law Dictionary as "[a] geographical area included within a particular government's jurisdiction," *see* TERRITORY, Black's Law Dictionary (10th ed. 2014),  Alabama should therefore be considered a "Territory of the United States."

But "Territory of the United States" is a term of art that does not include Alabama or any other state of the United States.  *See United States v. Maldonado-Burgos*, 844 F.3d 339, 342 (1st Cir. 2016) ("The Sherman Act treats territories

14

differently than states"); *See also People of Puerto Rico v. Shell Co. (P.R.)*, 302 U.S. 253, 259 (1937) (holding that, prior to the adoption of the Puerto Rico Constitution, Puerto Rico was included within the term "territory" in § 3); *Cordova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A.*, 649 F.2d 36, 37 (1st Cir. 1981) (holding that after "the change in Puerto Rico's status from 'territory' to 'Commonwealth,' section 3 no longer applies to Puerto Rico."). This is further evidenced by the juxtaposition of a "Territory or Territories" with a "State or States" within the statutory text. Alabama is not a "Territory of the United States" under 15 U.S.C. § 3, and thus Plaintiff cannot state a claim for relief under that section.[5]

---

[5] Again, Plaintiff has not challenged on appeal the district court's conclusion that Plaintiff failed to state a claim under 15 U.S.C. § 2. Thus, Plaintiff has waived this issue. *United States v. Duboc*, 694 F.3d 1223, 1226 n.1 (11th Cir. 2012). And even if we were to consider the adequacy of Plaintiff's pleadings as they relate to § 2, Plaintiff has failed to plead a violation of the Sherman Act under § 2. A violation of § 2 requires Plaintiff to "prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). "[T]o adequately plead dangerous probability of achieving monopoly power, the plaintiff must alleged that the defendant is 'close to achieving monopoly power' in the relevant product market." *Duty Free Americas, Inc. v. Estée Lauder Companies, Inc.*, 797 F.3d 1248, 1263 (11th Cir. 2015) (quoting *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.,* 7 F.3d 968, 995 (11th Cir.1993)). Here, Plaintiff provides no delineation of the relevant geographical or product market, and no factual allegations supporting that Defendants are "close to achieving monopoly power." *Id.* There is no mention of any Defendant or combination of Defendants' market share, nor any other factual support for the allegation that Defendants had achieved or probably would achieve market power.

15

### D.     Plaintiff's Request for a Declaratory Judgment

The district court held that since Plaintiff failed to state a federal claim, the court had no independent jurisdiction over Plaintiff's request for a declaratory judgment.  *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861–62 (11th Cir. 2008).  Because the district court did not err in dismissing Plaintiff's federal claims, the district court did not err in also concluding it lacked jurisdiction over Plaintiff's request for a declaratory judgment.

## III.   CONCLUSION

We **AFFIRM** the district court's dismissal of Plaintiff's Second Amended Complaint for failure to state a claim.[6]

---

[6]  Defendants Valley Creek, SWF and Drummond each also filed a motion for damages and costs against Plaintiff under Fed. R. App. P. 38.  Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  In this Circuit, "Rule 38 sanctions have been imposed against appellants who raise clearly frivolous claims in the face of established law and clear facts." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) (quotations omitted).  "For purposes of Rule 38, a claim is clearly frivolous if it is utterly devoid of merit." *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016) (quotations omitted).  While we conclude that the district court was correct to dismiss Plaintiff's Second Amended Complaint, we do not find Plaintiff's appeal to be "utterly devoid of merit" and therefore DENY the various Defendants' Rule 38 motions.